[Civ. No. 20058.  Second Dist., Div. One.  Oct 5, 1954.]

C. L. BACHTEL, Plaintiff and Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Defendant and Appellant.

Clifton A. Hix for Plaintiff and Appellant.

Samuel B. Stewart, Hugo A. Steinmeyer, Robert H. Fabian and Anthony T. Oliver, Jr., for Defendant and Appellant.

DORAN, J.—In an action for damages, the jury returned a $20,000 verdict in favor of plaintiff. A motion by defendant for a judgment notwithstanding the verdict was granted. This is an appeal from the judgment.

The controversy relates to two checks issued by appellant and which were returned to the payee because of insufficient funds. The only issue involved is "Whether the trial court was correct in concluding that there was no substantial evidence sufficient to justify the jury's verdict."

The facts, as recited in respondent's brief and which are supported by the record are, in part, as follows, "Sometime during the month of September, 1950, plaintiff became the sole owner of Pacific Motors, for which a Hudson franchise had been obtained. In September, 1950, Commercial Credit Corporation began the financing of new cars being sold by plaintiff. As part of this financing arrangement, plaintiff gave Commercial Credit Corporation a power of attorney authorizing it to execute trust receipts on his behalf covering vehicles to be financed. Pursuant to this power of attorney, Commercial Credit Corporation in December, 1950, and January, 1951, having financed the purchase of two new vehicles, executed trust receipts to itself as entruster on behalf of plaintiff as trustee describing these vehicles. These vehicles were sold by plaintiff in February, 1951. Instead of immediately turning the proceeds from the sales of these vehicles over to Commercial Credit Corporation, plaintiff kept and used the money in direct contravention of the terms of the trust receipts until a demand for the money was made by the inspector of Commercial Credit Corporation on May 10, 1951.

"On Thursday, May 10, 1951, a 'flooring' inspection of plaintiff's place of business in order to ascertain the presence or absence of the vehicles for which trust receipts had been issued was made by John Irwin, District Manager of Commercial Credit Corporation. As a result of physically checking the motor numbers of the vehicles then on the plaintiff's premises, Irwin discovered that the two vehicles mentioned above were not present. Upon Irwin's demand that plaintiff either produce the vehicles or pay for them, plaintiff gave

him two checks in payment, one in the sum of $2,045.31, and the other in the sum of $2,252.63, both dated May 10, 1951, and both drawn on the Tenth and Pacific Branch of the defendant bank. This transaction took place about 3:00 o'clock in the afternoon of Thursday, May 10. These two checks were delivered by Irwin to the bookkeeping department of his company on the morning of Friday, May 11, 1951, and were subsequently deposited by that company in its account with the Security-First National Bank, Hill and Atlantic Branch, Long Beach.

"These checks were received from the Security Bank by the Federal Reserve Bank, acting as clearing agent, on Saturday, May 12, 1951, at 11:45 a. m. It was not until Monday, May 14, that these checks were 'functioned,' or processed and sorted, by the Federal Reserve Bank and placed in the mail to the Tenth and Pacific Branch, Bank of America. The checks were received in the Tenth and Pacific Branch at 8:30 a. m. on Tuesday, May 15, along with other clearing house items.

"In the afternoon of May 14, upon hearing a rumor that he was going to sell out his business, Bachtel made a telephone call to Commercial Credit Corporation from a telephone booth in Long Beach and inquired as to the status of the two checks. He was informed by Commercial Credit that the checks had been deposited. He testified that he made this telephone inquiry because he 'was going to the bank and draw out some money' and because he wanted to know whether those checks had been paid or not. He further testified that the purpose of the proposed withdrawal of the money among other things was to pay some people that he owed money to other than Commercial Credit.

"On May 15, at approximately noon, plaintiff went to the Tenth and Pacific Branch of the Bank of America and requested the amount of his balance from one of the tellers. It is not clear whether he asked to see his statement or whether he only asked for his balance, but in either case, he was informed that his balance was slightly in excess of $5,000.00, a true balance as of that time. Bachtel was careful not to inquire whether the two checks had been charged to the account or to mention them at all at the bank. Plaintiff then proceeded to another teller's window and drew a check to himself for $4,300.00 which was approved by an assistant cashier of the Bank, and cashed. Before giving the cash to Bachtel the teller placed a temporary hold order on the

account, as a charge to the account to indicate that $4,300.00 cash had been paid out since the last balance was posted on the statement.

"During the morning of May 15, the two checks were sorted by the Tenth and Pacific Branch along with other clearing house items, preparatory to being posted to the respective accounts. In the normal course of events the sorting was not completed until around noon, when the posting began. Thus, in the afternoon of May 15 sometime after the plaintiff withdrew the $4,300.00, the two checks were posted to his account and run through the perforating machine which marked them 'Paid'. According to regular banking procedure these checks were batched and processed along with the other items received during the period commencing at 10:00 a. m. May 14 and ending at 10:00 a. m. May 15, 1951. All of such items were physically perforated on May 15, as of the previous day's date.

"On the morning of May 16 a routine review by the bank of the previous day's postings revealed that the checks drawn by Bachtel and received by the bank on May 15 had been posted over the hold order indicating Bachtel's $4,300.00 withdrawal. Mr. Bachtel was immediately informed by telephone that most of the $4,300.00 previously withdrawn by him would have to be returned if these items were to be paid. In answer to the request that Bachtel come into the bank to see him, Bachtel replied that he would, but failed to do so.

". . . . . . . . . . .

"From the moment Bachtel withdrew the $4,300.00 cash at noon on May 15, there were insufficient funds standing to his credit out of which to pay the disputed checks. Not only did he withdraw the $4,300.00 cash that day, but he also assigned his interest in his reserve account to Mr. Mitrovitch, his former partner, together with $1,000.00 cash drawn from the reserve account. Additionally, the same day he sold three cars which were the subject of trust receipts to Commercial Credit Corporation, but failed to account to Commercial Credit for the proceeds thereof. Further, he turned six or seven other automobiles over to Mitrovich for sale. He testified that he intended to use the proceeds of these vehicles to pay off Commercial Credit Corporation, but in effect he successfully completed a program designed to put the majority of his assets beyond the reach of his principal creditor."

An action was filed by Commercial Credit Corporation against Bachtel and a consent judgment for $12,000 was entered.

It is appellant's argument that as a result of the bank's action relating to the checks Bachtel "was closed up by Commercial Credit Company and his entire business lost."

The record does not support appellant's contention. That the trial court was correct in granting the motion there can be no question. Appellant's predicament is no fault of respondent. It is elementary that a depositor's own records are supposed to show the status of the bank account. The record clearly reveals that, in the circumstances here presented, it was Bachtel's fault that the checks in question were returned.

The judgment is affirmed; the cross-appeal is dismissed. Defendant to recover costs on appeal.

White, P. J., and Drapeau, J., concurred.